IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| SAMUEL J. LIVINGSTON | : | Case No. |
| 1255 Freeport Drive | | |
| Medina, Ohio 44256 | : | Judge |
| Plaintiff, | : | Magistrate Judge |
| v. | : | |
| ANGELO CALVILLO (in his official and | : | |
| individual capacities) | | **COMPLAINT** |
| 4726 Marcie Dr. | : | |
| Cleveland, Ohio 44109 | | (JURY DEMAND ENDORSED |
| | : | HEREON) |
| and | | |
| | : | |
| MICHAEL ODUM (in his official and | | |
| individual capacities) | : | |
| 6730 Solon Blvd. | | |
| Solon, Ohio 44139 | : | |
| and | : | |
| CITY OF CLEVELAND | : | |
| c/o Barbara Langhenry, Director of Law | | |
| 601 Lakeside Avenue | | |
| Cleveland, OH 44114 | | |
| Defendants. | | |

Now comes Plaintiff, Samuel Livingston, by and through counsel, and for his Complaint against Defendants Angelo Calvillo, Michael Odum and the City of Cleveland (collectively, "Defendants"), states and alleges the following:

1

## INTRODUCTION

1.     Plaintiff Samuel Livingston ("Livingston") is a Caucasian male, Ohio citizen and resident of Medina County, and a former Lieutenant Firefighter/Paramedic with the City of Cleveland Division of Fire.

2.     Defendant, the City of Cleveland (the "City") is a an Ohio Municipal Corporation located in Cuyahoga County, Ohio, and was the employer of Livingston prior to his constructive discharge in July of 2017.

3.     Defendant Angelo Calvillo is the Chief of the City of Cleveland Division of Fire and is being sued in both his individual and official capacities.  He is non-Caucasian and has held himself out to his colleagues and the public as non-Caucasian.

4.     Defendant Michael Odum is the Executive Officer of the City of Cleveland Division of Fire and is being sued in both his individual and official capacities.  He is non-Caucasian.

5.     At all times relevant, both Defendants Calvillo and Odum were supervisors of Livingston.

6.     The City employs Defendants Calvillo and Odum and is vicariously liable for their acts.

7.     At all times relevant, Livingston was an "employee" as defined and used in Tite VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq*. ("Title VII") and Chapter 4112 of the Ohio Revised Code ("Chapter 4112").

8.     The City is an "employer" as defined and used in Title VII and Chapter 4112.

2

9.     This suit is authorized and instituted pursuant to Title VII and Chapter 4112. Jurisdiction is conferred by 28 U.S.C. §1331 based on federal questions presented under Title VII and 42 U.S.C. §1983.

10.     This Court has supplemental jurisdiction over Livingston's Ohio state law claims under 28 U.S.C. §1367, as the claims derive from the same nucleus of operative facts as Livingston's federal claims.

11.     Livingston has satisfied all administrative preconditions for filing suit under Title VII and has a valid right to sue notice issued from the Equal Employment Opportunity Commission, which is attached hereto as *Exhibit A*.

12.     Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. §1391 because, among other reasons, a substantial portion of the events giving rise to the claims below arose in this judicial district.

**FACTUAL ALLEGATIONS**

13.     Livingston incorporates by reference the foregoing allegations as if fully rewritten herein.

14.     Livingston was hired by the City on October 9, 2000.

15.     Prior to his constructive discharge in July of 2017, Livingston worked in the position of Lieutenant Firefighter/Paramedic.

16.     Livingston was an exceptional employee and was highly respected by his peers. For example, in 2007, then-Assistant Chief Timothy O'Toole nominated Livingston to be recognized by the Cleveland Browns' Hats Off to Our Heroes program, citing Livingston's service in Iraq as a Sergeant in the 612th Engineer Battalion, during which he was awarded the Bronze Star

Medal and the Army Commendation Medal (with combat distinguishing device), along with Livingston's exceptional service to the Division of Fire.

17.     On April 5, 2016 Livingston was threatened and physically contacted in a hostile manner by a non-Caucasian co-worker, June Colon, while on duty.

18.     In addition to physically contacting Livingston, Mr. Colon also informed Livingston that he would continue to harass Livingston again every time he had the opportunity.

19.     In response to this physical and verbal violence, Livingston submitted to the City a complaint of violence in the workplace on May 5, 2016.

20.     Livingston completed a Form-10 as was requested of him by the City.

21.     The City's policies require the City to issue a response to a Form-10 within ten days, but Livingston did not receive such a response within the required time period.

22.     Upon information and belief, June Colon and Larry Gray (who was also involved in the incident with Mr. Colon and is non-Caucasian) were ordered to provide the same Form-10s by the Assistant Chief David Viancourt but did not comply.

23.     Upon information and belief, Defendants failed to report the workplace violence incident to the Human Resources Director as is required by the City's policies and procedures.

24.     Upon information and belief, Defendant Odum—without justification—ordered Assistant Chief David Viancourt, via email, to halt the investigation into Livingston's complaint after learning that Mr. Colon and Mr. Gray were the subjects of Livingston's complaint.

25.     On June 13, 2016, a non-Caucasian uniformed member of the Division of Fire came to Livingston's personal residence without prior warning or invitation.  Upon information and belief, the practice of sending uniformed members of the Division of Fire to employees' personal residences had been discontinued prior to the June 13, 2016 incident.  Because the City went

4

outside its normal procedures to engage Livingston, Livingston viewed the June 13 incident as a means to harass, intimidate, and silence Livingston.

26.     On July 26, 2016, Livingston made a formal request to the City for email, phone and other written or verbal correspondence regarding the April 5 incident but received no response.

27.     After submitting his complaint of violence in the workplace, months went by without a response from the City, despite Livingston's repeated attempts to ascertain the status of the investigation.  (Livingston's written complaints of racial discrimination and attempts to ascertain the status of the investigation are included in the emails attached hereto as *Exhibit B*.)

28.     Livingston made these requests to both Defendant Odum and Defendant Calvillo.

29.     During this time, it became apparent to Livingston that the mishandling of his complaint was due to his Caucasian race and that his complaint would have been handled appropriately and in accordance with the City's policies and procedures had Livingston not been Caucasian.

30.     Livingston complained in writing to the City that the actions of the City, through Defendants Odum and Calvillo, were racially discriminatory on numerous dates, including July 25, 2016; July 26, 2016; July 27, 2016; July 28, 2016; July 29, 2016; and August 1, 2016. (See *Exhibit B*.)

31.     For example, in an email dated July 26, 2016 at 3:36 pm, Livingston states: "[. . .] I wish to make a formal Racial Discrimination Complaint against Chief of the Division of Fire Angelo Calvillo and the Executive Officer, Chief Michael Odum. I contend that because I am Caucasian my complaint of violence in the workplace was not at all addressed by Chief Calvillo as required according to Human Resources Policy and Procedure. Further, the Executive Officer

5

ordered the Assistant Chief, Dave Viancourt to cease any and all investigation into the matter. I contend that this action was also based on my Caucasian race." (See ***Exhibit B***.)

32.     Livingston followed up with the City and Defendants Odum and Calvillo numerous times regarding the status of the City's investigation, yet Defendants failed to respond in any meaningful manner or communicate openly with Livingston, other than finally providing Livingston with an EEO Complaint intake form on August 1, 2016—nearly four months after the initial incident with Mr. Colon.

33.     Defendants placed Livingston in the Excessive Sick Use Program after Livingston was forced to use his accrued sick time during the nearly four month period the Defendants failed to address his complaint of violence in the workplace.

34.     Livingston had no other choice but to use his accrued sick leave in an attempt to avoid having to return to the hostile working environment created by the April 5 incident.

35.     After repeatedly requesting assistance from Defendants for months, it was not until October 7, 2016 that Defendants, via email, suggested conflict resolution between the parties.

36.     The email contains a reference to disciplinary action against Livingston, and Livingston perceived this message as a threat of discipline in retaliation for alleging racial discrimination in the workplace.

37.     Further, the proposed conflict resolution was to be conducted by Defendant Odum, the very person who was the subject of Livingston's complaint of racial discrimination. Livingston therefore felt such conflict resolution would be inherently biased against him, as well as intimidating.

38.     Upon information and belief, Defendants failed to promote Livingston from the rank of First Grade Firefighter to the rank of Lieutenant on November 3, 2016 when he was due to be promoted pursuant to the City's policies and procedures.

39.     Defendants did not contact Livingston regarding this issue until after Livingston inquired about the status of his promotion on November 3, 2016 and after Livingston filed his charge of discrimination with the Ohio Civil Rights Commission. (Livingston's inquiry to Union President Timothy Corcoran regarding his promotion is attached hereto as *Exhibit C*.)

40.     Defendants eventually—yet untimely—promoted Livingston to the rank of Lieutenant.

41.     In addition to making numerous written complaints of racial discrimination to Defendants via email, Livingston also submitted a complaint of race discrimination via a Complaint Intake Form to the City's Equal Opportunity Office on March 27, 2017.

42.     Even after doing so, Livingston's concerns remained ignored by Defendants.

43.     Upon information and belief, Defendant failed to properly handle Livingston's complaint of violence and the workplace as it would have done for non-Caucasian employees, instead ignoring his concerns for a period of months and forcing Livingston to work in a hostile work environment.  Upon information and belief, had Caucasians been the subject of Livingston's complaint instead of Mr. Colon and Mr. Gray, the City would have disciplined the individuals instead of permitting the individuals to act with impunity.

44.     After complaining to Defendant that the mis-handling of his complaint was due to reverse racial discrimination, Defendant retaliated against Livingston by—among other things—further delaying investigation into his complaint of violence in the workplace, placing him in the

Excessive Sick Use Program, failing to timely promote Charging Party to the rank of Lieutenant for which he was certified, and forcing him to work in a hostile work environment.

45.    On July 3, 2017, Livingston notified Defendants that he would be resigning from his position because he could not return to a workplace where he had been threatened, intimidated, assaulted, discriminated against and ignored.

46.    Prior to the hostile and discriminatory acts of Defendants described herein, Livingston loved his job and had no plans to leave his employment with the City.

47.    Livingston resigned only after making a final plea to Defendants that the hostile work environment and discrimination issues be addressed.  Defendants again chose not to address those issues.

48.    The hostile work environment, retaliation and isolation Livingston suffered after complaining of racial discrimination and after filing his charge of discrimination with the Ohio Civil Rights Commission caused intolerable working conditions for Livingston.

49.    Defendants deliberately created intolerable working conditions, as perceived by a reasonable person, with the intention of forcing Livingston to resign.

50.    Livingston had no choice but to resign from his employment, and a reasonable person in Livingston's position would have felt compelled to resign.  He has suffered from severe emotional distress as a result of Defendants' actions and inactions, which no reasonable person could endure.

51.    Livingston's resignation was a foreseeable consequence of Defendants' actions.

52.    Defendants' retaliation, discrimination, intentional isolation of Livingston, and creation of a hostile work environment caused Livingston to be constructively discharged from his position.

**FIRST AND SECOND CAUSES OF ACTION**
**(Reverse Race Discrimination in Violation of Title VII and Chapter 4112 - Against the City)**

53.     Livingston incorporates by reference the foregoing allegations as if fully rewritten herein.

54.     Livingston was qualified for his job, yet suffered adverse employment actions including, but not limited to when Defendants: (1) refused to comply with the City's own policies and procedures in investigating Livingston's complaint of violence in the workplace; (2) halted the investigation into Livingston's complaint; (3) placed Livingston in the Excessive Sick Use program after Livingston was forced to take accrued sick leave during the period of time Defendants failed to ensure a safe working environment for Livingston; (4) failed to promote Livingston to the rank of Lieutenant at the time he was due to be promoted pursuant to the City's policies and procedures and the parties' collective bargaining agreement; and (5) constructively discharged Livingston.

55.     Non-Caucasian employees have been treated more favorably than Livingston, and have been permitted to commit misconduct with impunity, such as the violence that Mr. Gray committed against Livingston.

56.     For example, Defendant Calvillo has previously been accused of tyrannizing firefighters, including physically assaulting a subordinate, yet received no discipline: http://www.cleveland.com/cityhall/index.ssf/2015/10/new_cleveland_fire_chief_angel.html

57.     Additionally, upon information and belief, Mr. Gray visited a class of cadets at the Fire Training Academy on May 2, 2017, during which he advised cadets to handle problems with violence.  After Livingston was approached by several concerned cadets regarding the meeting, Livingston made a complaint of Mr. Gray's actions to the City on May 9, 2017.

58. Upon information and belief Mr. Gray received no discipline for his acts.

59. Upon information and belief, Mr. Gray has been involved in multiple car accidents with City vehicles. Per City policy, Mr. Gray should have been drug tested but, upon information and belief, his superiors failed to do so and did not discipline him.

60. Upon information and belief, Mr. Gray missed continuing education necessary to remain in his position, yet the City failed to discipline him.

61. Unlike the City's treatment of non-Caucasian employees, Livingston was unfairly scrutinized during his tenure with the City.

62. For example, Livingston was suspended eight hours for missing continuing education while he was utilizing his own personal sick time. (A copy of the charge is attached hereto as *Exhibit D*, and a copy of the disciplinary findings is attached hereto as *Exhibit E*.)

63. Upon information and belief, other non-Caucasian similarly situated employees of the City missed portions of their continuing education during the same time period and did not utilize their personal sick time but were not suspended as Livingston was.

64. Livingston was treated differently than similarly situated non-Caucasian employees, and there are facts indicating that Defendant has an organizational preference for non-Caucasian employees.

65. For example, upon information and belief, Captain Geoff Galoja (who is Caucasian) and Lieutenant Ghadi Cole (who is non-Caucasian), were both deemed to have infractions that should be reviewed by the Chief of the Division. Captain Geoff was at a working fire and the Battalion Chief on scene gave him an order to evacuate his crew from the building. Captain Galoja expressed his feeling to the Battalion Chief that he believed they were making good progress with the fire but the Battalion Chief wanted him out anyway. The Chief of the

10

Division attempted to demote Captain Geoff Galoja two ranks (a 34% pay decrease) for the perceived infraction although there was no definitive "rule" that was broken.

66.     Upon information and belief, in the relative same time frame, Lieutenant Ghadi Cole was assigned to Engine 20. The City has a work rule that does not allow any suppression fire personnel to work in any other employment within eight hours of employees' shift start times. Lieutenant Cole works part time for another suburban city and worked within two hours of his start of shift at Engine 20. When Lieutenant Cole arrived at Engine 20 the Battalion Chief stationed at that house was made aware that Lieutenant Cole had broken the work rule and began the reporting process.

67.     Upon information and belief, instead of receiving punishment, the Chief of the Division moved Lieutenant Cole to a fire house which resulted in a senior Lieutenant being removed. The firehouse he was moved to was of Lieutenant Cole's choosing. Thus, instead of being punished, Lieutenant Cole was actually rewarded for his infraction.

68.     Upon information and belief, in addition, the City allowed Lieutenant Cole to take Christmas Day as a vacation pick even though the pick days were already full and had no room for his pick. That caused the Division to be over the allowable number of suppression personnel off during Christmas which will require more overtime to be utilized.

69.     Upon information and belief, another incident involved six Caucasian firemen who were severely punished (one being suspended for 6 months without pay and another being reduced two ranks which reduced his pay by 34% and greatly affected his pension). This punishment was issued as a result of an off-duty, off-City property incident during which an individual placed a picture the former chief (who is non-Caucasian) in a urinal at a local bar. Although no one was identified as the culprit, suspensions were levied against anyone who admitted to being present.

11

70.     In addition, upon information and belief, there are two reverse race discrimination issues currently being reviewed by the union IAFF Local 93. The first involves Lieutenant Tyree Thompson (who is non-Caucasian), who was recently assigned to the Hazardous Materials Unit.

71.     Upon information and belief, the Hazardous Materials Unit position is a resume position for which a specific qualification must be met in order to be sent there. Several members (who are Caucasian) who claim to be more qualified (Hazardous Materials Specialist) bid for the position but were overlooked.

72.     The second issue relates to a junior promoted Lieutenant named Hank Martin (who is non-Caucasian). Upon information and belief, he was assigned to a staff position which is customary for newly promoted officers—the Fire Academy.

73.     Upon information and belief, Defendant Odum told Assistant Fire Chief Frank Chontos that he wanted to see more black officers on the street and to reassign Mr. Martin.

74.     There are background circumstances indicating that the Defendant discriminates against Caucasian employees like Livingston.

75.     Defendants treat similarly situated non-Caucasian employees more favorably than Caucasian employees when conducting investigations of alleged violations of workplace policies and procedures, and has an organizational preference for non-Caucasian employees.

76.     The City has created and perpetuated a disparity in its treatment and discipline of Caucasian employees versus non-Caucasian employees.

77.     Defendants have chosen to protect a non-Caucasian employee who has created an unsafe and hostile workplace and who threatened and physically contacted Livingston, and then constructively discharged Livingston after Livingston complained of violence in the workplace and reverse race discrimination.

12

78.     Defendants treated Livingston differently because of his race, including with respect to the terms, conditions and privileges of employment.

79.     Defendants discriminated against Livingston because of his race with respect to the terms, conditions, and privileges of his employment by, including but not limited to refusing to properly address and investigate Livingston's complaints of violence in the workplace and race discrimination.

80.     Defendants constructively discharged Livingston from his employment because of his race, and in retaliation for making complaints of racial discrimination and violence in the workplace.

81.     Because of Livingston's race, Defendants subjected Livingston to discriminatory treatment, including by subjecting him to unwarranted scrutiny, and discriminating against him in terms of pay, discipline, opportunities, and other terms and conditions of his employment.

82.     Defendants' discrimination against Livingston as described herein and other discrimination against Livingston violated Title VII and Ohio Revised Code §§4112.02 and 4112.99.

83.     As a direct and proximate result of Defendants' conduct, Livingston has suffered and will continue to suffer non-economic and economic damages, including but not limited to pain and suffering and the loss of past and future economic losses, salary, wages, benefits, and other privileges and conditions of employment, for which the City is liable.

84.     Defendants' conduct as described herein was willful, wanton, reckless and/or malicious, and renders the City liable for compensatory damages, punitive damages and attorneys' fees pursuant to Title VII and R.C. §4112.99.

13

**THIRD AND FOURTH CAUSES OF ACTION**
**(Retaliation in Violation of Title VII and Chapter 4112 – Against the City)**

85.     Livingston incorporates by reference the foregoing allegations as if fully rewritten herein.

86.     Livingston engaged in Title VII-protected activity including, but not limited to when he complained about racial discrimination to the Defendants in writing on numerous occasions. (See *Exhibit B*).

87.     Defendants knew that Livingston engaged in a protected activity.

88.     Defendants subsequently took adverse, retaliatory action against Livingston by, among other things, refusing to properly address his complaints of violence in the workplace and racial discrimination in accordance with the City's policies and procedures, by placing Livingston in the Excessive Sick Leave program, by failing to timely promote Livingston to the rank of Lieutenant, by disciplining him, and by constructively discharging him.

89.     The adverse actions were causally related to the protected activity.

90.     The Defendants' actions were committed intentionally, maliciously, wantonly, and/or recklessly.

91.     The City is liable to Livingston for economic and non-economic compensatory damages, back pay, front pay, fringe benefits, attorneys' fees and costs, punitive damages and any additional legal or equitable relief to which Livingston may be entitled.

**FIFTH AND SIXTH CAUSES OF ACTION**
**(Hostile Work Environment in Violation of Title VII and Chapter 4112 – Against the City)**

92.     Livingston incorporates by reference the foregoing allegations as if fully rewritten herein.

14

93.     Defendants never assured Livingston that he could operate at a working fire scene, accident scene, first responder scene, or even in the daily operations at the firehouse without the threat by Mr. Colon that the scenario on April 5th would be repeated.

94.     Livingston requested assurances numerous times over a period of months, yet Defendants failed to take immediate and corrective action to address Livingston's concerns of violence in the workplace and racial discrimination. (See *Exhibit B*).

95.     Because of Defendants' total failure to address these concerns, Livingston was forced to take sick leave, vacation time, and compensatory time to avoid having to return to the hostile work environment. Ultimately, Defendants' deliberate indifference toward Livingston's concerns was so severe and pervasive that Livingston was forced to resign.

96.     The behavior to which Livingston was subjected by Defendants was sufficiently severe and pervasive to alter the conditions of Livingston's employment and create a hostile working environment.

97.     The harassment described above to which Livingston was subjected was unwelcome, and was based on Livingston's race.

98.     The City knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

99.     The Defendants' actions were committed intentionally, maliciously, wantonly, and/or recklessly.

100.    The City is liable to Livingston for economic and non-economic compensatory damages, back pay, front pay, fringe benefits, attorneys' fees and costs, punitive damages and any additional legal or equitable relief to which Livingston may be entitled.

15

## SEVENTH CAUSE OF ACTION
### (Fourteenth Amendment Violation under 42 U.S.C. §1983 – Against all Defendants)

101.    Livingston incorporates by reference the foregoing allegations as if fully rewritten herein.

102.    As described above, Defendant the City, Defendant Calvillo, and Defendant Odum, acting under the color of State law, intentionally discriminated against Livingston –a citizen of the United States—based on his race and purposely deprived Livingston of his rights as secured by the Constitution and laws of the United States in violation of 42 U.S.C. §1983, including but not limited to those afforded under the Fourteenth Amendment (Equal Protection) to the United States Constitution.

103.    Defendants acted intentionally, negligently, with deliberate indifference to, and with callous and wanton disregard for Livingston's Fourteenth Amendment rights, by discriminating against him based on his race, as described above.

104.    At all times relevant, upon information and belief, the Defendants, each acting under color of state law, engaged in conduct against Livingston which violated clearly established constitutional and/or statutory rights that a reasonable person, at the time of the violations in question occurred, would have known was illegal.

105.    The actions and inactions described above were done as a custom or policy of the City.

106.    As a result of Defendants' actions, Defendants deprived Livingston of his right to equal protection under the laws, in violation of the Fourteenth Amendment of the Constitution of the United States, and 42 U.S.C. §1983.

107.    As a result of Defendants' violations of 42 U.S.C. § 1983, Livingston has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Samuel Livingston respectfully seeks judgment against Defendants in an amount in excess of $75,000 to fully, fairly and justly compensate him for injury, damage and loss, and respectfully prays that this Court enter judgment in his favor and award him past and future economic and non-economic compensatory damages, front pay, fringe benefits, consequential damages, incidental damages, punitive damages, interest, reasonable attorneys' fees, costs and expenses, and any additional legal or equitable relief to which he may be entitled.

Respectfully submitted,

CRITCHFIELD, CRITCHFIELD & JOHNSTON, LTD.


By:        /s/ Kimberly L. Hall
Kimberly L. Hall (S. Ct. #0090677)
225 North Market Street, P.O. Box 599,
Wooster, OH 44691
Tel: (330) 264-4444; Fax: (330) 263-9278
E-Mail: khall@ccj.com
*Attorneys for Plaintiff*


## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues in this action.


/s/ Kimberly L. Hall
Kimberly L. Hall

17